UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x

In re:

|  |  |
|---|---|
|  | Case No. 12-76045-ast |
| ALICE PHILLIPS BELMONTE, | (Chapter 7) |
|  |  |
| Debtor. |  |
|  |  |
| HAROLD D. JONES, Chapter 7 Trustee, | Adversary Proceeding No. |
|  | 15-8156-ast |
| Appellant-Plaintiff, |  |
|  |  |
| -against- | Case No. 17-cv-2494-JMA |
|  |  |
| CRAIG A. BRAND and THE BRAND |  |
| LAW FIRM, P.A., |  |
|  |  |
| Appellees-Defendants. |  |

---------------------------------------------------x


**<u>BRIEF OF APPELLEES</u>**



**CRAIG A. BRAND, ESQ.**
Florida Bar No. 896111
THE BRAND LAW FIRM, P.A.
GAI Building
108 E. South Street, Suite 500
Orlando, Florida 32801
Tel. (305) 878-1477
E-Mail: Craig@thebrandlawfirm.com

**ATTORNEYS FOR APPELLEES-
DEFENDANTS, CRAIG A. BRAND
AND THE BRAND LAW FIRM, P.A.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................    iv

ABBREVIATIONS ...........................................................................................................    viii

STATEMENT OF THE ISSUES PRESENTED AND APPLICABLE
STANDARD OF APPELLATE REVIEW...........................................................................    1

STATEMENT OF THE FACTS AND PROCEDURAL HISTORY OF THE CASE .......    2

LEGAL ARGUMENT.

    I.   THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION BY
        FAILING TO AWARD ANY PORTION OF THE JUDGMENT AGAINST
        APPELLEE-DEFENDANT, CRAIG A. BRAND, INDIVIDUALLY..........    16

   II.   THE BANKRUPTCY COURT DID NOT EXPAND THE SCOPE OF THE
        TRUSTEE'S OCTOBER 8, 2013, 11 U.S.C. § 329 DISGORGEMENT
        MOTION INCLUDE DISGORGEMENT OF THE THOMPSON LOAN
        PROCEEDS.   THE APPELLANT FAILED TO ARGUE THE ISSUE
        CONCERNING PARAGRAPH 7 OF THE JUDGMENT IN ITS INITIAL
        BRIEF; THEREFORE, THE APPELLANT HAS WAIVED THAT ISSUE
        ON APPEAL...................................................................................    18

  III.   DEFENDANTS, CRAIG A. BRAND AND THE BRAND LAW FIRM,
        P.A., WERE NOT INITIAL TRANSFEREES OF THE UNAUTHORIZED
        POSTPETITION LIEN OR THE ENTITY OR ENTITIES FOR WHOSE
        BENEFIT SUCH TRANSFER WAS MADE................................................    21

  IV.   DEFENDANT, THE BRAND LAW FIRM, P.A., WOULD HAVE BEEN
        AN IMMMEDIATE TRANSFEREE OF THE DEBTOR AND HER
        HUSBAND'S UNAUTHORIZED POSTPETITION LIEN SUBJECT TO
        AN ACTION TO RECOVER THE $250,000.00 LOANED IN EXCHANGE
        FOR THE SECOND LIEN ON THE CRESCENT COURT PROPERTY
        UNDER 11 U.S.C. § 550(a)(2); HOWEVER, BECAUSE THE
        APPELLANT, CHAPTER 7 TRUSTEE, HAD ALREADY SOUGHT AND
        OBTAINED A JUDGMENT PRESERVING THE UNAUTHORIZED
        POSTPETITION LIEN FOR THE BENEFIT OF THE DEBTOR'S ESTATE
        UNDER 11 U.S.C. § 551, THE CHAPTER 7 TRUSTEE HAD ELECTED
        ITS REMEDY AND WAS LIMITED IN ITS RECOVERY AGAINST THE
        IMMEDIATE TRANSFEREE TO PROOF OF ACTUAL DAMAGES TO
        THE DEBTOR'S ESTATE AS A RESULT OF THE SINGLE
        SATISFACTION PROVISION SET FORTH IN 11 U.S.C. § 550(d)...........    25

V.   TO THE EXTENT THAT THE APPELLATE COURT HOLDS THAT THE BANKRUPTCY COURT WAS CORRECT IN RULING THAT THE TRUSTEE HAD NOT ELECTED ITS REMEDY BY PRESERVING THE UNAUTHORIZED POSTPETITION LIEN FOR THE BENEFIT OF THE DEBTOR'S ESTATE UNDER 11 U.S.C. § 551, THE TRIAL COURT DID NOT ERR BY APPLYING THE "MERE CONDUIT" DEFENSE TO THE $250,000.00 BANK WIRED FROM PATRICK THOMPSON INTO THE BRAND LAW FIRM, P.A. TRUST ACCOUNT AND DID NOT ERR BY FAILING TO HOLD DEFENDANT, CRAIG A. BRAND, INDIVIDUALLY LIABLE FOR ANY PORTION OF THE SAID MONIES.......................................................................................................   29

VI.   TO THE EXTENT THAT THE APPELLATE COURT HOLDS THAT THE BANKRUPTCY COURT WAS CORRECT IN RULING THAT THE TRUSTEE HAD NOT ELECTED ITS REMEDY BY PRESERVING THE UNAUTHORIZED POSTPETITION LIEN FOR THE BENEFIT OF THE DEBTOR'S ESTATE UNDER 11 U.S.C. § 551, THE TRIAL COURT DID NOT ERR BY AWARDING ONLY ONE-HALF OF THE $118,864.00 NET TRUST ACCOUNT BALANCE TO THE APPELLANT-CHAPTER 7 TRUSTEE IN PARAGRAPH "1" OF THE JUDGMENT.........................   32

VII.   APPELLEES-DEFENDANTS, CRAIG A. BRAND AND THE BRAND LAW FIRM, P.A., ARE NOT JOINTLY AND SEVERALLY LIABLE FOR THE RETURN OF THE ENTIRE PROCEEDS OF THE $250,000.00 THOMPSON LOAN.......................................................................................   34

CONCLUSION...........................................................................................   37

RELEVANT STATUTORY PROVISIONS

11 U.S.C. § 101.  Definitions............................................................................38
11 U.S.C. § 329. Debtor's transactions with attorneys.....................................38
11 U.S.C. § 363. Use, sale, or lease of property...............................................38
11 U.S.C. § 541. Property of the estate............................................................39
11 U.S.C. § 544. Trustee as lien creditor and as successor to certain creditors and purchasers........................................................................................ 39
11 U.S.C. § 549. Postpetition transaction........................................................ 40
11 U.S.C. § 550. Liability of transferee of avoided transfer..............................40
11 U.S.C. § 551. Automatic preservation of avoided transfer...........................40

# TABLE OF AUTHORITIES

**Table of Cases:**

*Bell v. Bell,*
225 F.3d 203 (2d Cir. 2000) ...................................................................22

*Bonded Financial Services, Inc. v. European American Bank,*
838 F.2d 890 (7th Cir. 1988) ................................................................ 23

*Bowers v. Atlanta Motor Speedway, Inc.*
*(In re Southeast Hotel Properties Limited Partnership),*
99 F.3d 151 (4th Cir. 1996) ................................................................. 24

*Christy v. Alexander & Alexander of New York, Inc.*
*(In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey),*
130 F.3d 52 (2d Cir.1997), *cert. denied,* 524 U.S. 912, 118 S.Ct. 2295,
141 L.Ed.2d 154 (1998) ...................................................................23,29

*DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.),*
151 F.2d 75, 79 (2d Cir. 1998) .............................................................. 2

*Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sciences,*
804 F.3d 178 (2d Cir. 2015) ................................................................ 21

*Ederer v. Gursky,*
9 N.Y.3d 514, 521-522, 881 N.E.2d 204 (2007) ......................................... 17

*Eisen v. Allied Bancshares mortgage Corp (In re Priest),*
268 B.R. 135 (Bankr. N.D. Ohio 2000) ................................................... 27

*Fed. Ins. Co. v. PGG Realty, LLC,*
529 F. Supp. 2d 460 (S.D.N.Y. 2008) .................................................... 26

*HBE Leasing Corp. v. Frank,*
48 F.3d 623 (2d Cir. 1995) ...................................................................28

*In re A. & V. Appliance Co.,*
149 F.Supp. 3 (E.D. N.Y. 1957) ........................................................... 17

*In re AVI, Inc.,*
389 B.R. 721 (9th Cir. BAP 2008) ......................................................... 4

*In re Belmonte,*
551 B.R. 723 (Bankr. E.D. N.Y. 2016) ...................................................26

*In re Bridgeview Aerosol*,
538 B.R. 477 (Bankr. N.D. Ill. 2015) ............................................................... 34,35,36

*In re Cassandra Group*,
338 B.R. 583 (Bankr. S.D.N.Y. 2006) .......................................................................36

*In re Checkmate Stereo & Electronics, Ltd.*,
9 B.R. 585 (Bankr.E.D.N.Y.1981), *aff'd*, 21 B.R. 402 (E.D.N.Y. 1982) .....................28

*In re Downs*,
103 F.3d 472 (6th Cir. 1996) ...................................................................................... 17

*In re Fabric Buys of Jericho, Inc.*,
33 B.R. 334 (Bankr.S.D.N.Y.1983) ............................................................................ 30

*In re Hirsch*,
339 B.R. 18 (E.D.N.Y. 2006) ....................................................................................... 2

*In re Int'l Admin. Servs., Inc.*,
408 F.3d 689 (11th Cir. 2005) ...................................................................................... 4

*In re Moskowitz*,
85 B.R. 8 (E.D.N.Y. 1988) .......................................................................................... 23

*In re Murray*,
543 B.R. 484 (Bankr. S.D.N.Y. 2016) ........................................................................33

*In re Richmond Produce, Inc.*,
195 B.R. 455 (N.D. Cal. 1996) ..................................................................................... 4

*In re Sufolla, Inc.*,
2 F.3d 977 (9th Cir. 1993) ............................................................................................ 4

*Johnson v Augsbury Org.*,
167 A.D.2d 783 (1990) ............................................................................................... 23

*Kapila v. Suntrust Mortg. (In re Pearlman)*,
515 B.R. 887 (Bankr. M.D. Fla. 2014) .......................................................................27

*Lassman v. Patts, (In re Patts)*,
470 B.R. 234 (Bankr. D. Mass. 2012) .........................................................................27

*Louisiana State Bar Ass'n v. Gross*,
576 So.2d 504 (La.1991) ............................................................................................. 30

*Manon v. Pons*,
131 F. Supp. 3d 219 (S.D.N.Y. 2015) ...................................................................... 21

*McRoberts v. Transouth Fin. (In re Bell)*,
194 B.R. 192 (Bankr.S.D.Ill.1996) ........................................................................ 27

*Picard v. The Lustig Family 1990 Trust (In re Madoff)*,
No 10-04417 (Bankr. S.D. N.Y. June 1, 2017) ......................................................28

*Rupp v. Markgraf*,
95 F.3d 936 (10th Cir. 1996) ................................................................................. 24

*Security First Nat'l Bank v. Brunson (In the Matter of Coutee)*,
984 F.2d 138 (5th Cir. 1993) ........................................................................... 29,30

*Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC
(In re Bernard L. Madoff Inv. Sec. Secs.)*,
501 B.R. 26 (S.D.N.Y. 2013) ..................................................................................4

*Sheet Metal Workers' National Pension Fund v. Amodeo*,
No. 09-cv-0121-SJF-ARL (E.D.N.Y. May 27, 2016) .............................................. 21

*Tese-Milner v. Moon (In re Moon)*,
385 B.R. 541 (Bankr. S.D.N.Y. 2008) ................................................................... 23

*The Florida Bar v. Joy*,
679 So.2d 1165 (Fla. 1996) ...................................................................................31

*United American Bank of Central Florida, Inc. v. Seligman*,
599 So.2d 1014 (Fla. 5th DCA 1992) ....................................................................31

*Wyoming County Bank & Trust Co. v. Kiley*,
75 A.D.2d 477, 430 N.Y.S.2d 900 (4th Dept. 1980) ............................................. 24

## Statutes:

11 U.S.C. § 101(54)(A).........................................................................................22

11 U.S.C. § 329 ........................................................1,2,3,14,15,16,17,18,19,20

11 U.S.C. § 329(b) ..............................................................................3,8,11,20,26

11 U.S.C. § 362 .......................................................................................................7

11 U.S.C. § 363 .................................................................................................33,34

11 U.S.C. § 363(h) ................................................................. 33,34

11 U.S.C. § 363(i) ................................................................. 33,34

11 U.S.C. § 363(j) ................................................................. 33,34

11 U.S.C. § 363(n) ................................................................. 26

11 U.S.C. § 541 ................................................................. 22,25

11 U.S.C. § 541(a) ................................................................. 25,28

11 U.S.C. § 541(a)(1) ................................................................. 25,27

11 U.S.C. § 541(a)(2) ................................................................. 25

11 U.S.C. § 541(a)(4) ................................................................. 26,27

11 U.S.C. § 541(a)(6) ................................................................. 26,29

11 U.S.C. § 544 ................................................................. 3,12,13,27

11 U.S.C. § 545 ................................................................. 3,12,13,27

11 U.S.C. § 547 ................................................................. 3,12,13

11 U.S.C. § 548 ................................................................. 3,12,13

11 U.S.C. § 549 ................................................................. 1,2,3,4,9,10,11,12,13,15,18,20,24

11 U.S.C. § 550 ................................................................. 1,2,3,4.5.9,11,12,15,24,26,35

11 U.S.C. § 550(a) ................................................................. 3,12,25,26,27,28,29

11 U.S.C. § 550(a)(1) ................................................................. 3,21,25,34,36

11 U.S.C. § 550(a)(2) ................................................................. 3,25

11 U.S.C. § 550(d) ................................................................. 4,13,25,27,28,36

11 U.S.C. § 551 ................................................................. 9,12,13,24,25,26,27,29.32

**Rules:**

Fed. R. Bankr. P. 2016 ................................................................. 11,20

Fed. R. Bankr. P. 2017 ...................................................................................... 11,20

Fed. R. Bankr. P. 7054 ......................................................................................... 15

Fed. R. Bankr. P. 8002(a) .................................................................................... 16

**Other Authorities:**

Robert J. White, <u>Leveraged Buyouts & Fraudulent Conveyance Law Under
the Bankruptcy Code</u>, 1991 Ann. Surv. Am. L. 357, 410-11 (1992) .......................................... 28

## ABBREVIATIONS

Because citations to various bankruptcy proceedings related to the Debtor are incorporated into this Initial Brief of Appellant, and such descriptions are not only lengthy, but often repetitive, Appellant will use footnotes to refer to the Record citations.

<u>Additionally, Appellant will cite to the Record on Appeal docketed in 17-cv-2494-JMA as follows:</u>

"RA" will indicate Docket No.'s 2, 2-1 and 2-2 combined constitute the Record on Appeal for Adversary Case No. 15-8156-ast combined, followed by the applicable page number or numbers.

"MCRA" will indicate Docket No. 2-3, the Record on Appeal for Main Case No. 12-76045-ast. followed by the applicable page number or numbers.

"329 Disgorgement" will indicate a disgorgement being sought or ordered under 11 U.S.C. § 329(b).

"A." will indicate the Appendix of the Appellant, followed by the page number.

"AE" will indicate the Appendix of the Appellee, followed by the page number.

<u>Appellee will utilize the following abbreviations in the Brief of Appellees:</u>

"Appellant", "Trustee" or "Chapter 7 Trustee" or "Plaintiff" will be used to refer to Appellant-Plaintiff, Harold D. Jones, Trustee.

"Brand Adversary Case" will indicate United State Bankruptcy Court for the Eastern District of New York Adversary Case No. 15-8156-ast, styled HAROLD D. JONES, Chapter 7 Trustee, Plaintiff, v. CRAIG A. BRAND and THE BRAND LAW FIRM, P.A., Defendants, filed April 22, 2015.  <u>This is the underlying bankruptcy case which resulted in the Judgment upon which this appeal is based</u>.

"Debtor's Husband's Adversary Case" will indicate United State Bankruptcy Court for the Eastern

District of New York Adversary Case No. 15-8160-ast, styled HAROLD D. JONES, Chapter 7 Trustee, Plaintiff, v. WILLIAM BELMONTE, Defendant, filed April 23, 2015.

"Dkt. Entry" or "Dkt. No." followed by a number or numbers will indicate the Docket Entry Number entered by the Clerk of the Bankruptcy Court or the Clerk of the United States District Court, as and when indicated.

"JPM" will indicate the Joint Pretrial Memorandum filed October 17, 2016, by the parties in the Brand Adversary Case Dkt. Entry 58.  A.  __-__.

"Main Case" will indicate United State Bankruptcy Court for the Eastern District of New York Case No. 12-76045-ast, styled: In re: ALICE PHILLIPS BELMONTE, Debtor, filed as an involuntary bankruptcy petition on October 5, 2012, and adjudicating the Debtor a bankrupt on April 25, 2013, entered on the docket April 26, 2013.  [At the end of the November 3, 2016, trial of the Brand Adversary Case, the Bankruptcy Judge took "notice of the entireties of the pleadings in the Main Case from the filing (*sic*) of the involuntary through the entry of the order for relief."  Tr: 43:11-18.  Reference to facts relating to the date of docket entries filed in the Main Case, which are not specifically duplicated in the Record on Appeal, will be indicated only by Main Case followed by the docket number.]

"Thompson Adversary Case" will indicate United State Bankruptcy Court for the Eastern District of New York Adversary Case No. 14-8322-ast, styled HAROLD D. JONES, Chapter 7 Trustee, Plaintiff, v. ALICE BELMONTE and WILLIAM BELMONTE, husband and wife, and PATRICK THOMPSON, Defendants, filed November 21, 2014.

## APPELLEES' STATEMENT OF THE ISSUES PRESENTED AND APPLICABLE STANDARD OF APPELLATE REVIEW

## STATEMENT OF THE ISSUES PRESENTED BY APPELLANT

1.      Whether the Bankruptcy Court erred in denying the Trustee's request for judgment against Craig A. Brand personally under 11 U.S.C. §§ 329, 549, and 550 and Fed. R. Bankr. P. 2016?

2.      Whether the Bankruptcy Court erred in concluding that Craig Brand and/or The Brand Law Firm acted as a "mere conduit" with respect to the funds received as proceeds of the mortgage executed in favor of Patrick Thompson?

3.      Whether the Bankruptcy Court erred in concluding that only one-half of the proceeds of the Thompson mortgage were avoidable and recoverable pursuant to 11 U.S.C. § 549 and 550?

Germane to the Appellant's issue "1" on Appeal, the Appellees respectfully point out that the portion of paragraph "1" of the Judgment being appealed does not include challenging the Bankruptcy Court's finding that $120,000.00 of the $170,000.00 in attorney's fees charged for representing the Debtor in the involuntary bankruptcy portion of the Main Case is the proper amount to be disgorged pursuant to 11 U.S.C. § 329. Appellant's appeal of paragraph "1" of the Judgment is limited to the exclusion of Appellee-Defendant, Craig A. Brand, individually, as an additional party against whom the $120,000.00 was awarded. Issue "1" as it relates to the $250,000.00 Thompson Loan is a separate issue from the $120,000.00 disgorgement award.

Additionally, Appellee, The Brand Law Firm, P.A., has separately appealed paragraph "2" of the Bankruptcy Court's Judgment to the extent that it was error for the Bankruptcy Court to award any portion of The Thompson Loan against Defendant, The Brand Law Firm, P.A. That appeal is pending under Case No. 17-cv-2503-JMA.

1

**STANDARD OF REVIEW**

**APPELLANT'S ISSUE "1"** [1]

Appellant's issue "1": "Whether the Bankruptcy Court erred in denying the Trustee's request for judgment against Craig A. Brand personally under 11 U.S.C. §§ 329, 549. and 550."

The Appellees respectfully suggest that the Standard of Review of Appellant's Issue "1" is not *de novo*, as Appellant argues.  The standard of review is "abuse of discretion" under 11 U.S.C. §§ 329 and "clear error" under 11 U.S.C. § 550. [2]

At the conclusion of the March 16, 2017, Ruling Conference Hearing, the Bankruptcy Court specifically held: "[I]n terms of against whom this judgment will be entered, because this record before the Court is that each of the payments at issue were made directly into a law firm account of The Brand Law Firm, P.A., the judgment will be entered against that entity." [Emphasis added.]   A 58, Lines 5-9.

 "Matters left to the court's discretion are reviewed for abuse of discretion." *In re Hirsch*, 339 B.R. 18, 24 (E.D.N.Y. 2006) (citing *DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.2d 75, 79 (2d Cir. 1998)).  Appellant's Motion for Disgorgement (A 97-111) is based upon 11 U.S.C. § 329; therefore, the appeal of the Court's § 329 ruling is subject to the "abuse of discretion" standard.  Neither Appellant or the Appellees have sought review of the $120,000.00 amount ordered to be disgorged under the Appellant's Motion for Disgorgement.  Based on the evidence adduced at trial and the docket in the Main Case, the Bankruptcy Court entered Judgment for the $120,000.00 only against Appellee, The Brand Law Firm, P.A.  Appellant seeks review of the failure of the Bankruptcy Court to award $120,000.00 § 329 award against Appellee, Craig A. Brand, individually.

---

[1] The Appellees acknowledge that the *de novo* standard of review is applicable to Appellant's Issues "2" and "3."
[2] There is no dispute that the postpetition lien created by the second mortgage was avoidable under 11 U.S.C. § 549.

11 U.S.C. § 329 states:

**§329. Debtor's transactions with attorneys**
(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation. (b) If such compensation exceeds the reasonable value of any such services, **the court may** cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
      (1) the estate, if the property transferred—
          (A) would have been property of the estate; or
          (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
      (2) the entity that made such payment.

Emphasis added.  The emphasized portion of § 329 clearly vests the Bankruptcy Court with discretion.  Therefore, the decision of the Bankruptcy Court under 11 U.S.C. § 329 not to order Craig A. Brand, individually, to disgorge attorney's fees for representing the Debtor in the involuntary bankruptcy portion of the proceedings is reviewed under the "abuse of discretion" standard.

11 U.S.C. § 549 states in material part:

**§549. Postpetition transactions**
(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
      (1) that occurs after the commencement of the case; and
      (2)    (A) that is authorized only under section 303(f) or 542(c) of this title; or
          (B) that is not authorized under this title or by the court.

11 U.S.C. § 550 states in material part:

**§550. Liability of transferee of avoided transfer**
(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, **the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders**, the value of such property, from—
      (1) the initial transferee of such transfer or the entity for whose benefit such

3

transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

...

...

(d) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

Emphasis added.

The Ninth Circuit Bankruptcy Appellate Panel clarified the distinction between a claim for avoidance of a Postpetition transfer and the remedy to be determined under § 550:

Section 549, which addresses postpetition transfers, focuses on the transfer and contains nothing that defines the proper defendant. Avoidability is an attribute of the transfer and not the party. [*In re Richmond Produce, Inc.*, 195 B.R. 455, 463 (N.D. Cal. 1996) citing *In re Sufolla, Inc.*, 2 F.3d 977, 982 (9th Cir. 1993); *In re Int'l Admin. Servs., In*c., 408 F.3d 689, 707 (11th Cir. 2005)]("[T]he distinction between initial transferee and mediate transferee for avoidance purposes is irrelevant[;] defendants need only be transferees."). *Id.* at 733-34.

*In re AVI, Inc.*, 389 B.R. 721, 733 (9th Cir. BAP 2008). Both Avi and Int'l Admin. Servs. were cited with approval in *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC (In re Bernard L. Madoff Inv. Sec. Secs.)*, 501 B.R. 26, 31 (S.D.N.Y. 2013).

Count I of the Trustee's two (2) count Amended Complaint in the adversary proceeding filed against both Appellees sought avoidance of the unauthorized postpetition granting of a $250,000.00 second mortgage lien executed by the Debtor and her husband in favor of Patrick Thompson (the Thompson Loan") pursuant to 11 U.S.C. § 549. The second lien had been issued to secure a $250,000.00 post-petition promissory note issued by the Debtor and her husband to Patrick Thompson. *See*, paragraph 10 of the Amended Complaint, incorporated by reference into Count I (A 84-88). For the purpose of the appeal, there is no dispute that the <u>securing</u> of the promissory note in favor of Thompson by the second lien was an unauthorized postpetition transfer of property of the estate; i.e., encumbering the Debtor's estate's real property with a lien.

4

Count II of the Amended Complaint sought a remedy against both Craig A. Brand, individually and against The Brand Law Firm, P.A., under 11 U.S. C. § 550.  The Bankruptcy Court held that while the proceeds of the Thompson Loan were transferred into The Brand Law Firm, P.A. Trust Account, the Trustee had not proven that Craig A. Brand, individually, was liable for any portion of the transfer.  The Bankruptcy Court's holding was based upon the facts adduced at trial.  Therefore, the appeal of the § 550 holding should be reviewed under the "clear error" standard.

## STATEMENT OF THE FACTS AND PROCEDURAL HISTORY OF THE CASE

## FACTUAL HISTORY

On April 25, 2013, the Bankruptcy Judge adjudicated the Debtor a bankrupt, which ruling was entered on the docket April 26, 2013.[3]

From October 5, 2012, through April 21, 2016, at which time the Debtor and her husband, William Belmonte, were divorced, the home and property located at 5 Crescent Court, Wading River, Suffolk County, New York (the "Crescent Court Property") was owned by the Debtor and William Belmonte as tenants by the entirety and was their homestead property.[4,5]

From the Petition Date through the date of trial, the Crescent Court Property was subject to a first mortgage dated October 4, 2011, issued by the Debtor and her husband, William Belmonte, in favor of People's United Bank in the original principal sum of $460,000.00 (the "First Mortgage").[6]

The last payment received by People's United Bank on the First Mortgage was May 16,

---

[3] AE __, at * 12, § H, ¶ 11.  RA 43, § H, ¶ 11
[4] AE __, at * 12, § H, ¶ 13.  RA 43, § H, ¶ 13.
[5] AE __, at * 12, § H, ¶ 14.  RA 43, § H, ¶ 14.
[6] AE __, at * 12-13, § H, ¶ 15.  RA 43-44, § H, ¶ 1

2014.[7]  After giving credit for the May 16, 2014 First Mortgage payment, the principal balance

due on the First Mortgage was $453,701.08.[8]

On October 17, 2013, six (6) months after the Debtor had been adjudicated a bankrupt, the

Debtor was arrested on a forty-nine (49) count indictment issued under New York State Supreme

Court County of New York Indictment No. 4261/2013 (hereinafter the "Criminal Case").[9]  The

Debtor was held in custody subject to a $3,000,000.00 cash or surety bond with a 72-hour surety.[10]

On or about October 17, 2013, Debtor employed the following three law firms to

simultaneously represent her in the Criminal Case: The Brand Law Firm, P.A., represented by

Craig A. Brand; Sadaka Law Group, PLC, represented by Thomas A. Sadaka; and Simon &

Partners LLP, represented by Brian D. Waller.[11]

From October 17, 2013, through December 23, 2013, Patrick Thompson ("Thompson"), a

wealthy New York businessman, sophisticated in real estate investments, longtime close social

and family friend, and Godfather to the Debtor's daughter, worked with all three law firms jointly

in an unsuccessful attempt to first obtain a reduction of the bond and then to obtain Debtor's release

on bond with Thompson personally posting the $3,000,000.00 bond plus an $80,000.00 Clerk's

fee with the Clerk of Court and acting as personal surety.   At the conclusion of the December 23,

2013, hearing wherein the Criminal Court Judge refused to authorize Thompson to act as personal

surety for Ms. Belmonte's release on bail, Thompson was extremely upset.  He immediately

discussed providing attorneys' fees and costs for the bond proceedings and the three law firms'

---

[7] AE __, at * 13, § H, ¶ 17.  RA 44, § H, ¶ 17.

[8] AE __, at * 13, § H, ¶ 18.  RA 44, § H, ¶ 18.

[9] AE __, at * 12, § H, ¶ 11.  RA 43, § H, ¶ 11.

[10] Affirmation of Craig A. Brand, RA 111, ¶ 38, admitted in evidence as Exhibit LL at Trial, A. 170-171, Nov. 2, 2016, Tr: 38:14-39:23.

[11] Affirmation of Craig A. Brand, RA 108, ¶ 33, admitted in evidence as Exhibit LL at Trial A. 170-171, Nov. 2, 2016, Tr: 38:14-39:23); Affirmation of Brian D. Waller, RA 61, ¶ 6, admitted in evidence as Exhibit FF at trial, RA 395, Nov. 3, 2016, Tr: 19:14-19.

joint defense of the Debtor in the Criminal Case.  Thompson and the three law firms orally agreed on an initial payment of $250,000.00 to be paid for attorneys' fees and costs for representation of the Debtor for the Writ [of Habeas Corpus] and through the discovery process, and plea negotiations ~~and any plea~~ through that time.[12]

As a condition of funding the criminal defense, Thompson, the Debtor and Debtor's Husband agreed as follows: Debtor and Debtor's Husband would execute a promissory note in the sum of $250,000.00 in favor of Thompson  (the "Note"), and Debtor and Debtor's Husband would execute a second mortgage on their jointly owned principal residence located 5 Crescent Court, Wading River, in Suffolk County, New York (the Crescent Court Property"), securing payment of the Promissory Note and a second mortgage on their jointly owned condominium unit located in Indian River County, Florida.[13]   [The condominium unit was not the subject of any adversary action by the Chapter 7 Trustee, nor the parties to this appeal.]  For the purpose of this appeal, Appellants will also refer to the second mortgage on the Crescent Court Property as the "Second Mortgage" or the "Thompson Mortgage."

As a result of Thompson's oral agreement with the Debtor and Debtor's Husband, Thompson requested The Brand Law Firm, P.A. to prepare a $250,000.00 promissory note and a second mortgage on both the Crescent Court Property and their jointly owned condominium located in Indian River County, to secure the payment of the Promissory Note.[14]

The Promissory Note stated it was effective January 2, 2014, reflected a five (5) year maturity at four percent (4%) simple interest per annum and required only a single balloon payment of the entire principal and accrued interest be made at maturity on January 2, 2019.[15]

---

[12] A. 253-255; Nov. 2, 2016, Tr: 121:11-123:25.
[13] A 148; Nov. 2, 2016, Tr: 16:12-17.
[14] A 252, Nov. 2, 2016, Tr: 120:2-6.
[15] AE 48; RA 1017.

On the evening of January 2, 2013, The Brand Law Firm, P.A. emailed to Thomas A. Sadaka, Esq., the Debtor's attorney, a draft of the proposed $250,000.00 promissory note and a second mortgage on both the Crescent Court Property and the Florida jointly owned condominium to secure the payment of the Promissory Note for approval by the Debtor's attorney.  Later that evening, the Debtor's attorney sent a reply email approving the said documents.[16]

On Monday, January 6, 2014, a bank wire for $110,000.00 of the $250,000.00 was received from Thompson's company, TWP Real Estate LLC, in The Brand Law Firm, P.A. Trust Account; it was **not** wired to Craig A. Brand personally or into the general operating account of The Brand Law Firm, P.A.[17]

On Friday, February 14, 2014, a bank wire for the remaining $140,000.00 of the $250,000.00 was received from Thompson's company, TWP Real Estate LLC, in The Brand Law Firm, P.A. Trust Account.[18]

<u>None of the money bank wired to The Brand Law Firm, P.A. Trust Account came from the Debtor or Debtor's Husband.  The bank wires were solely funded with Thompson's money.</u>[19]

On Tuesday, February 18, 2014, Debtor's Husband acting individually and on behalf of Debtor pursuant to a power of attorney, executed the Promissory Note reflecting an effective date of January 2, 2014.[20]

<u>On July 18, 2014, six (6) and five (5) months, respectively, **after** Thompson's company</u>

---

[16] Affirmation of Craig A. Brand, RA 112, 139-155; admitted in evidence as Exhibit LL at Trial A. 170-171; Nov. 2, 2016, Tr: 38:14-39:23).

[17] A 152; Nov. 2, 2016, Tr: 20:15-18.  *See also*, Trust Account Records showing receipt of the bank wire in Exhibit "C" to Affirmation of Craig A. Brand, RA 157, admitted in evidence with objections as Exhibit LL at Trial A. 170-171; Nov. 2, 2016, Tr: 38:14-39:23.

[18] A 152-153; Nov. 2, 2016, Tr: 20:25-21:3.  *See also*, Trust Account Records showing receipt of the bank wire in Exhibit "C" to Affirmation of Craig A. Brand, RA 160, admitted in evidence with objections as Exhibit LL at Trial A. 170-171, Nov. 2, 2016, Tr: 38:14-39:23.

[19] A 284; Nov. 2, 2016, Tr: 19:15-20:14.

[20] AE 20 at * 13, § H, ¶ 16.  RA 44, § H, ¶ 16.

had wired the $250,000.00 to The Brand Law Firm, P.A. Trust Account, Debtor's Husband acting individually and on behalf of Debtor pursuant to a power of attorney, executed a Second Mortgage on the Crescent Court Property securing the Promissory Note executed February 18, 2014.[21]

On July 18, 2014, the Second Mortgage on the Crescent Court Property securing the Promissory Note was recorded in the Public Records of Suffolk County, New York.[22]

During 2014 the $250,000.00 received from Thompson's company, TWP Real Estate LLC, by The Brand Law Firm, P.A. Trust Account, was disbursed among the three law firms representing the Debtor in her criminal case.[23]

On November 21, 2014, the Chapter 7 Trustee filed a four (4) count Complaint in Adversary Case No. 14-8322-ast, Dkt. Entry 1, against the Debtor, the Debtor's Husband and Patrick Thompson (the "Thompson Adversary Case"). Count I sought to avoid the Second Mortgage and the loan underlying it pursuant to 11 U.S.C. § 549; Count II sought to have the Second Mortgage and loan underlying it preserved for the benefit of the Debtor's Estate pursuant to 11 U.S.C. § 551; Count III alleged that Thompson, as the initial transferee of the Second Mortgage, should be required to turnover to the Trustee either the Second Mortgage, or the value of the Second Mortgage pursuant to 11 U.S.C. § 550; Count IV sought damages as a result of a willful violation of the automatic stay under 11 U.S.C. § 362.[24]

On February 27, 2015, Patrick Thompson and the Chapter 7 Trustee entered into a proposed Settlement Agreement which was submitted for approval in the Main Case. **On March 24, 2015, the Bankruptcy Judge entered an Order approving the settlement avoiding the**

---

[21] AE 20, at * 13, § H, ¶ 21.  RA 44, § H, ¶ 21.
[22] AE 20, at * 13, § H, ¶ 22.  RA 44, § H, ¶ 22.
[23] *See*, RA 157-173 (Trust Account Records showing receipt of the Thompson bank wires in The Brand Law Firm, P.A. Trust Account and disbursement to Sadaka Law Group and Simon & Partners set forth as Exhibit "C" to Affirmation of Craig A. Brand), admitted in evidence with objections as Exhibit LL at Trial A. 170-171, Nov. 2, 2016, Tr: 38:14-39:23.
[24] RA 19-23.

**Second Mortgage under 11 U.S.C. §§ 549 and 550, preserving the lien created by the Second Mortgage for the benefit of the Debtor's Estate under 11 U.S.C. § 551, and otherwise dismissing the Thompson Adversary Case with prejudice.**[25]

On April 22, 2015, the Chapter 7 Trustee filed a two count Complaint in Adversary Case No. 15-8156-ast against the Defendants, Craig A. Brand and The Brand Law Firm, P.A. Brand Adversary Case Dkt. Entry 1. On May 20, 2015, the Chapter 7 Trustee refiled the same two count action as an Amended Complaint, therein correcting a typographical error in the original Complaint.[26] Count I of the Amended Complaint alleged that the $250,000.00 wired into The Brand Law Firm, P.A. Trust Account in two tranches January 6, 2014, and February 14, 2014, by Thompson's company, TWP Real Estate LLC (the "Thompson Loan") was property of the Debtor's Estate and the transfer should be held to be an unauthorized post-petition transfer under 11 U.S.C. § 549; Count II alleged that the Chapter 7 Trustee was entitled to recover the $250,000.00 proceeds of the Thompson Loan from the Brand Adversary Case Defendants.

On April 23, 2015, the Chapter 7 Trustee filed an Adversary Complaint against the Debtor's Husband in Adversary Case No. 15-8160-ast requesting the Bankruptcy Judge to authorize the Trustee to sell the Crescent Court Property (hereinafter "Debtor's Husband's Adversary Case").[27] On May 4, 2016, at the Husband's Adversary Case Ruling Conference, the Bankruptcy Judge made certain findings that a sale of the Crescent Court Property would yield "$7,500.00 to the [Debtor's Estate] as a best case scenario."[28] Based on the minimal value to the Debtor's estate and the preference of preserving the family home, the Bankruptcy Judge denied

---

[25] AE 24-26, Exhibits Q and R admitted in evidence at trial A. 160-161; Nov. 2, 2016, Tr: 28:17-29:8; 149:24-25.
[26] A. 84-88.
[27] RA 378, Debtor's Husband's Adversary Case Ruling Conference Tr: 31:17-18
[28] RA 382; Debtor's Husband's Adversary Case Ruling Conference Tr: 34:17-21.

the Chapter 7 Trustee's Complaint to authorize the sale of the Crescent Court Property.[29]

## PROCEDURAL HISTORY

Appellees herewith supplement Appellant's procedural history with the following:

The procedural history of this appeal arises out of two related proceedings, which were tried together non-jury by the Bankruptcy Court on November 2-3, 2016.

On October 8, 2013, in United States Bankruptcy Court for the Eastern District of New York Case Number 12-76045-ast (hereinafter "Main Case"), the Appellant, Chapter 7 Trustee, filed a Motion for Entry of an Order: (A) Compelling Craig Brand and Michael Sherman to Comply with 11 U.S.C. 329 and Fed. R. Bankr. P. 2016; and (B) Compelling Disgorgement (*sic*) of Excessive Fees (Main Case 12-76045-ast Dkt. Entry 155) (the "First Disgorgement Motion").[30]

The First Disgorgement Motion sought disgorgement of attorney's fees relating to the representation provided to the Debtor by the Defendants and Michael Sherman during the time period from October 5, 2012, the date the Involuntary Petition was filed against the Debtor, through April 25, 2013, the date the Debtor was adjudicated a bankrupt.

On February 3, 2015, the Bankruptcy Judge entered an Order Establishing Protocol for Trustee's Motion for Disgorgement.[31]

On February 15, 2015, Appellant, Chapter 7 Trustee, filed what he titled as a "Motion for Order Pursuant to 11 U.S.C. § 329(b) and Fed. R. Bankr. P. 2016 and 2017 Requiring Thomas Sadaka, Craig ~~M~~A. Brand, and Michael Sherman to Disgorge Excessive Legal Fees. (Trustee's "Second Disgorgement Motion").[32]

---

[29] RA 387, Debtor's Husband's Adversary Case Ruling Conference Tr: 39:8-15.
[30] AE 1-7; MCRA 22-28.
[31] MCRA 332-336
[32] A. 97-111.

11

On March 24, 2015, in a separate Adversary Case No. 14-8322-ast, the "Thompson Adversary Case", the Bankruptcy Judge entered an Order approving a settlement between the Chapter 7 Trustee and Patrick Thompson avoiding the Second Mortgage under 11 U.S.C. §§ 549 and 550, and preserving the lien created by the Second Mortgage for the benefit of the Debtor's Estate under 11 U.S.C. § 551.[33]

On April 22, 2015, approximately four weeks after the Chapter 7 Trustee obtained the Order avoiding the Second Mortgage and preserving its lien for the benefit of the Debtor's Estate in the Thompson Adversary Case, the Chapter 7 Trustee filed the Brand Adversary Case (Adversary Case No. 15-8156-ast).[34]   The Brand Adversary Case Complaint alleged that the $250,000.00 post-petition loan funded by Thompson 8.5-9.5 months after the Debtor had been adjudicated a bankrupt constituted an unauthorized transfer of property the Debtor's Estate, that the unauthorized transfer should be avoided and the $250,000.00 recovered by the Debtor's Estate. Brand Adversary Case Dkt. Entry 1.  An Amended Complaint, correcting a typographical error in the original Complaint, was filed May 20, 2015.[35]

The Chapter 7 Trustee's damage claim was based upon the wording of 11 U.S.C. § 550(a) which states:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>     (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>     (2) any immediate or mediate transferee of such initial transferee.

The Brand Adversary Case Defendants answered the Amended Complaint on May 23,

---

[33] AE 24-26, Exhibits Q and R admitted in evidence at trial A. 160-161; Nov. 2, 2016, Tr: 28:17-29:8; 149:24-25.
[34] A. 79-83.
[35] A. 84-88.

2015, denying that the $250,000.00 loaned by Patrick Thompson from Patrick Thompson's funds had ever been the property of the Debtor's Estate, that neither Defendant was an the initial transferee or the entity for whose benefit such transfer was made, and affirmatively alleging that the Chapter 7 Trustee claim was barred by affirmative defenses, including the single satisfaction rule, the election of remedies as a result of the Order avoiding the Second Mortgage under 11 U.S.C. §§ 549 and 550, and preserving the lien created by the Second Mortgage for the benefit of the Debtor's Estate under 11 U.S.C. § 551, and the mere conduit defense.[36]

11 U.S.C. § 549, entitled "Postpetition Transfers" states in applicable subpart:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
     (1) that occurs after the commencement of the case; and
     (2)   (A) that is authorized only under section 303(f) or 542(c) of this title; or
         (B) that is not authorized under this title or by the court.

11 U.S.C. § 550(d) states:

(d) **The trustee is entitled to only a single satisfaction under subsection (a) of this section**.  [Emphasis added.]

11 U.S.C. § 551 states:

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

<u>On November 23, 2015</u>, the Bankruptcy Court entered an Interlocutory Order making preliminary findings of fact and conclusions of law concerning the Trustee's disgorgement motion.[37]  [<u>These preliminary findings of fact and conclusions of law will be discussed in material part in the Argument Section below</u>.]

---

[36] A. 89-96.
[37] AE 27-47.

On June 7, 2016, the Bankruptcy Judge consolidated both matters for discovery and trial.[38]

On June 28, 2016, the Bankruptcy Judge entered an interlocutory order, *inter alia*, holding further stating, "the Court rejects Defendants' position that the Trustee is prohibited from recovering the $250,000 from Defendants as a double recovery because he has successfully avoided the Thompson Mortgage."

On October 17, 2016, the parties filed their Joint Pretrial Memorandum ("JPM").[39] Section E of the JPM recited twenty-four (24) exhibits, numbered consecutively from 1 through 24, which the chapter 7 Trustee proposed to admit into evidence and thirty-six (36) proposed exhibits, listed in alphabetical order from A through JJ, which Craig A. Brand and The Brand Law Firm, P.A. proposed to admit into evidence.  Section H of the JPM contained twenty-two (22) paragraphs of stipulated facts.

On November 2-3, 2016, the Bankruptcy Judge tried the consolidated Trustee's 329 Motion and Adversary Case Non-Jury.  The testimony of Patrick Thompson, Thomas Sadaka, Esq., and Craig A. Brand, Esq. was entered in the record on November 2, 2016.  The testimony of Debtor's Husband, William Belmonte, and Brian D. Waller, Esq. was entered in the record November 3, 2016.   The Bankruptcy Judge admitted all of the Trustee's twenty-four exhibits,[40] and the following Exhibits of the Defendants listed in the JMA into evidence: Initially, exhibits A through JJ with the exception of D, EE, FF and GG were admitted;[41] however, Exhibit FF was subsequently admitted.[42]  The Bankruptcy Judge also took notice of the ruling he issued at May 4, 2016, ruling conference transcript in the Debtor's Husband's Adversary Case No. 15-8160-ast.[43]

---

[38] RA 27-30.
[39] AE 8-23.
[40] A. 22-73.
[41] RA 815, Nov. 2, 2016, Tr: 149: 24-25.
[42] RA 929, Nov. 3, 2016, Tr: 19:14-16.
[43] A 417; Nov. 3, 2016, Tr: 41:23-25, taking Notice of RA 349-400.

On March 16, 2017, the Bankruptcy Court held its telephonic ruling conference.[44] The Court prefaced its rulings on the following:

> The Court had also been asked during the trial proceedings to take notice and/or judicial notice of various matters. The Court bases this ruling on the uncontested allegations in the parties' pleadings and exhibits, the trial evidence which was submitted, as well as the matters of which this Court may and has taken either notice or judicial notice. The trial in this combined matter was conducted on November 2nd and 3rd of 2016, which numerous exhibits were admitted, witness testimony was taken, and the Court took notice of various matters.[45]

The Court then pointed out that the subject of his ruling concerned two issues: The first issue, the disgorgement issue, concerning the time and fee determination regarding the legal services provided to the Debtor in the involuntary case, is not the subject of this appeal. The Court's ruling on the second issue, "the unauthorized post-petition transaction which resulted in the Bankruptcy Estate's interest in the Debtor's home being pledged to secure a $250,000 loan made by a third party to provide for Debtor's criminal defense, which [the Court referred] to as the 549 dispute."[46]

On April 7, 2017, Judgment was entered[47] as follows (A. 74-75):

1.      The Brand Law Firm, P.A. is hereby ordered, pursuant to 11 U.S.C. § 329, to disgorge the sum of **one hundred twenty thousand dollars ($120,000.00)** to the Trustee within **thirty (30) days** from the entry of this Order.

2.      Judgment is hereby entered, pursuant to 11 U.S.C. §§ 549 and 550, in favor of the Trustee and against The Brand Law Firm, P.A. in the amount of **fifty nine thousand four hundred thirty two dollars ($59,432.00)**.

3.      The Trustee is further awarded his costs against The Brand Law Firm, P.A. pursuant

---

[44] A. 22-73.
[45] A. 26, lines7-16.
[46] A. 28, lines 12-17.
[47] The Judgment was docketed April 10, 2017.  A. 74-75.

to Fed. R. Civ. P. 54(d), as made applicable to this proceeding by Fed. R. Bankr. P. 7054.

4.      The Trustee shall have execution on this Judgment.

5.       The Trustee shall have all the rights afforded to a judgment creditor by law.

6.      The Trustee may enforce this judgment against The Brand Law Firm, P.A. as allowed by applicable law.

7.      The balance of the relief requested by the Trustee and all other relief requested in this matter by any party are denied with prejudice.

On April 24, 2017, pursuant to Fed. R. Bankr. P. 8002(a), Harold D. Jones, Chapter 7 Trustee filed his appeal herein.[48]

## LEGAL ARGUMENT

### I.

### THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION BY FAILING TO AWARD ANY PORTION OF THE JUDGMENT AGAINST APPELLEE-DEFENDANT, CRAIG A. BRAND, INDIVIDUALLY.

11 U.S.C. § 329 states in material part, "**"the court may** cancel any such agreement, or **order the return of any such payment, to the extent excessive**." [Emphasis added.]  Paragraph "1" of the Bankruptcy Court's Judgment ordered disgorgement of $120,000.00 of the $170,000.00[49] in fees paid to Appellee, The Brand Law Firm, P.A., during the time period when the Debtor's involuntary bankruptcy proceeding was pending (October 5, 2012, through April 25, 2013).  The trial transcript is devoid of any evidence of attorney's fee payments made directly to Craig A. Brand, individually.

**Thus, the Appellant-Chapter 7 Trustee, failed to prove that (1) any payments subject to the**

---

[48] Separately, The Brand Law Firm, P.A., timely appealed from the award set forth in paragraph "2" of the Judgment. That appeal is pending under Case No.  17-cv-2503-JMA.
[49] RA 234-235, Referred to in paragraph 26 (RA 106) of the Trial Testimony by Affirmation of Craig A. Brand, Individually and as President of The Brand Law Firm, P.A.

**11 U.S.C. § 329 action, or (2) the $250,00.00 bank wired by Patrick Thompson concerning the Thompson Loan, were received by Craig A. Brand, individually**.

At the March 16, 2017, Ruling Conference Hearing the trial court confirmed:

[I]n terms of against whom this judgment will be entered, because this record before the Court is that each of the payments at issue were made directly into a law firm account of The Brand Law Firm, P.A., the judgment will be entered against that entity.

A 58, Lines 5-9.  No portion of the record cited in Appellant's Brief reflects any payments being made directly to Craig A. Brand, individually.

Further, no trial evidence was adduced, let alone cited or argued in Appellant's Brief that The Brand Law Firm, P.A., did not have lawful corporate existence or that The Brand Law Firm, P.A., was utilized in the commission of a fraud.

None of the cases cited by the Appellant support Appellant's argument that, having entered a 329 disgorgement order against a law firm, the Bankruptcy Court abused its discretion by failing to enter a 329 disgorgement order against an individual member of a law firm.  As Appellant points out in discussing *In re Downs*, 103 F.3d 472 (6th Cir. 1996)[50], the *Downs'* bankruptcy court's order being appealed had awarded sanctions against both the law firm and the lawyer; the appellate decision merely discussed the insufficiency of the amount of sanctions awarded, **not** against whom the sanctions were awarded.  The only other case cited by the Appellant to support its argument was *In re A. & V. Appliance Co.*, 149 F.Supp. 3 (E.D. N.Y. 1957).  The Appellant misapprehends the holding.  The case involved a partnership, not an entity having separate corporate existence, such as a limited partnership or corporation.  As such the $800.00 disgorgement award against the law firm was enforceable against any or all of the partners.[51]  The *A. & V.* holding simply found

---

[50] Brief of Appellant, at * 13-14.
[51] See, *Ederer v. Gursky*, 9 N.Y.3d 514, 521-522, 881 N.E.2d 204 (2007)(discussing New York Partnership Law § 26 as it existed between 1919 and adoption of the Uniform Partnership Act in 1994).

that there was no legal basis for the Trustee to bring an action to reduce the disgorgement order to judgment; the trustee merely had to move for an order of contempt.

Appellant has not appealed the insufficiency of the Bankruptcy Court's disgorgement of $120,000.00 of the $170,000.00 in fees paid The Brand Law Firm, P.A. for the representation of the Debtor during the pendency of the involuntary petition.  <u>Appellant seeks only to expand the $120,000.00 disgorgement award to include Craig A. Brand, individually.  Appellant has not cited a single case demonstrating a bankruptcy judge abuses his or her discretion in entering a 329 disgorgement award solely against a law firm and not against a specific lawyer in that firm</u>.

## II.
**THE BANKRUPTCY COURT DID NOT EXPAND THE SCOPE OF THE TRUSTEE'S OCTOBER 8, 2013, 11 U.S.C. § 329 DISGORGEMENT MOTION TO INCLUDE DISGORGEMENT OF THE THOMPSON LOAN PROCEEDS.   THE APPELLANT FAILED TO ARGUE THE ISSUE CONCERNING PARAGRAPH 7 OF THE JUDGMENT IN ITS INITIAL BRIEF; THEREFORE, THE APPELLANT HAS WAIVED THAT ISSUE ON APPEAL.**

Appellant's Brief completely disregarded the Trustee's original October 8, 2013, Motion for Disgorgement and included only a discussion of the Trustee's February 25, 2015, filing as the basis for this appeal of the 329 disgorgement issue concerning the $250,000.00 proceeds of the Thompson Loan.

At the March 16, 2017, Ruling Conference Hearing, the Court prefaced its rulings on the 329 disgorgement issue with the following:

> **The fee dispute that was tried in November relates back to October 2013 when the Trustee filed the motion seeking to compel Mr. Brand and Mr. Sherman to file fee statements as required under the Bankruptcy Code and Rules**. [Emphasis added.]

A. 38, Tr: 17:3-10.

> **I believe that the Orders that I've issued previously indicate that I'm not making an assessment of what a reasonable fee for the criminal defense of Ms.**

**Belmonte was; I'm making an assessment of what the reasonable fees incurred in connection with the bankruptcy case during the <u>timeline that I bookmarked in the series of prior Orders</u>.** [Emphasis added.]

The issue on the $250,000 is more, **as we may see something different now from the Trustee in the motion for leave to amend and we'll see it when we see it.** But it was essentially a 549 analysis that post-petition, the Debtor encumbered property of the bankruptcy estate in connection with the transaction to obtain the funds necessary for her criminal defense -- that's a pure straight-up 549. [Emphasis added.]

So I don't need to make the analysis of whether $250,000 was right, wrong, or indifferent for a criminal defense.

A. 411; Nov. 3, 2016, Tr: 35:9-18.

The timeline to which the Bankruptcy Court referred was set forth in the Order of November 23, 2015, Main Case Docket Entry 510.[52]  In reviewing what the Bankruptcy Court referred to as **"The Present Fee Dispute"** (emphasis added), <u>the Court's Order pointed out that the Trustee's disgorgement motion under 11 U.S.C. § 329 was filed October 8, 2013</u>, referring to Main Case Docket Entry 155.[53]

The timeline stated that on November 19, 2013, the Bankruptcy Court commenced a hearing on the Trustee's disgorgement motion "and from the bench directed all of Debtor's former and current attorneys to file detailed fee statements within sixty days with respect to compensation that was paid to them or had been agreed to be paid in connection with or in contemplation of Debtor's bankruptcy case between October 5, 2012 (the petition date) and April 25, 2013 (the date of the order for relief) (the "Fee Period")".  On December 23, 2013, the Bankruptcy Court entered on a formal order on its November 19, 2013, bench directive.[54]

<u>The November 23, 2015, Order further recited that on February 25, 2015, the Trustee had</u>

---

[52] AE 27-47; MCRA 460-480.
[53] AE 1-7; MCRA 22-28.
[54] MCRA 353-354.

filed "a brief" in which "[t]he Trustee also asserts that after entry of the order for relief, Debtor and her husband borrowed $250,000 from a Patrick Thompson secured by a second mortgage on their home ("the Thompson Loan"), and had loan proceeds transferred directly to Mr. Brand to finance Debtor's criminal defense efforts; it is not clear what portion of these funds, if any, the Trustee seeks to have disgorged [AE 35, n. 8]."  It is significant that the Bankruptcy Court referred to the Trustee's February 25, 2015, filing entitled "Motion for Order Pursuant to 11 U.S.C. § 329(b) and Fed. R. Bankr. P. 2016 and 2017 requiring Thomas Sadaka, Craig Brand, and Michael Sherman to Disgorge Excessive Legal Fees" ("the February 25, 2015, Filing") as "a brief" instead of a superseding motion to the original October 8, 2013, Motion for Disgorgement.

The Bankruptcy Court's November 23, 2015, Order[55] clearly limited the subject of the Trustee's "329" proceeding to the Fee Period "between October 5, 2012 (the petition date) and April 25, 2013 (the date of the order for relief).")  That directly contradicts the Appellant's premise. Further, as the Court pointed out at the conclusion of the trial, *supra*, the portion of the February 25, 2015, filing relating to the Thompson Loan was no more than "a 549 analysis that post-petition, the Debtor encumbered property of the bankruptcy estate in connection with the transaction to obtain the funds necessary for her criminal defense -- that's a pure straight-up 549.

> I need to make the analysis of whether or not the Debtor made an improper 549 transfer incident to obtaining funds for her criminal defense, which appear very much at this junction to have been money that Mr. Thompson loaned in order to secure Mr. Brand, Mr. Sadaka, and Mr. Waller's services. And that the loan that that was made was documented by a note and mortgage Mr. Brand prepared, which created both a monetary obligation on behalf of each Belmonte and created a lien against their property, which Ms. Belmonte's interest was property of the bankruptcy estate at the time the note and mortgage were executed.

A. 411-12; Nov. 3, 2016, Tr: 35:18-36:3.

The Appellant failed to seek to amend its original October 8, 2013, disgorgement motion.

---

[55] AE 27-47; MCRA 460-480.

Paragraph 7 of the Judgment states: "The balance of the relief requested by the Trustee and all other relief requested in this matter by any party are denied with prejudice."  By failing to raise and argue the issue of whether the Bankruptcy Court erred in failing to consider the Thompson Loan under 11 U.S.C. § 329 in the Appellant's initial brief, the Trustee has failed to preserve the issue on appeal.  See, *Sheet Metal Workers' National Pension Fund v. Amodeo*, No. 09-cv-0121-SJF-ARL, Dkt. Entry 128, at * 17 (E.D.N.Y. May 27, 2016), citing:

> *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sciences*, 804 F.3d 178, 192 (2d Cir. 2015) (holding that the plaintiff waived an argument that he failed to address in his original brief); *Manon v. Pons*, 131 F. Supp. 3d 219, 238-39 (S.D.N.Y. 2015) (holding that the "standard rule" that "arguments may not be made for the first time in a reply brief . . . applies with equal force in the District Court. (quotations and citations omitted)).

## III.
### DEFENDANTS, CRAIG A. BRAND AND THE BRAND LAW FIRM, P.A., WERE NOT INITIAL TRANSFEREES OF THE UNAUTHORIZED POSTPETITION LIEN OR THE ENTITY OR ENTITIES FOR WHOSE BENEFIT SUCH TRANSFER WAS MADE.

Appellant's argument that the Appellees-Defendants are initial transferees of the Thompson loan or the entity for whose benefit the transfer was made under 11 U.S.C. § 550(a)(1) is without foundation, both literally and figuratively.

The impetus for the Thompson Loan arose because the Debtor and her husband, William Belmonte, sought to obtain funds to pay for the legal defense of the forty-nine (49) count Indictment filed by the State of New York, County of New York against Alice Belmonte.  In order to obtain the $250,000.00 in legal fees being charged for her joint criminal defense by three separate law firms, the Debtor and her husband executed a $250,000.00 promissory note ("Note")[56] in favor of Patrick Thompson.  The Note is dated January 2, 2014; i.e., <u>approximately 8 and 1/2</u>

---

[56] AE 48; RA 1017.

months subsequent to the Debtor being adjudicated a bankrupt.  William Belmonte did not file a bankruptcy petition, nor was he adjudicated a bankrupt.  Had the postpetition Note been the sole subject of the Thompson Loan, the $250,000.00 loan proceeds of the Note would not have been property of the Debtor's Estate as defined by 11 U.S.C. § 541.  "[P]roperty acquired post-petition by the debtor does not enter the estate; it remains the separate property of the debtor."  *Bell v. Bell*, 225 F.3d 203, 215 (2d Cir. 2000).

The unauthorized postpetition transfer occurred when the Note was securitized by a Second Mortgage lien on real property of the Debtor's Estate; *i.e.*, the Crescent Court marital home (the "Second Mortgage").[57]  The Second Mortgage was executed July 17, 2014, and recorded in the Public Records of Suffolk County, New York, on July 18, 2014.  As previously documented in the Statement of Facts, *supra*, Patrick Thompson funded the $250,000.00 proceeds of the loan to the Debtor and her husband who exercised dominion and control over the loan proceeds by directing Thompson to pay the loan proceeds for the defense of the Debtor's criminal charges.

Appellant argues that each of the Appellees are either "initial transferees" or "the entity for whose benefit the transfer was made."[58]  That is absolutely incorrect.

The "initial transferee" of the property interest in the Debtors Estate (the "Second Mortgage" lien) was Patrick Thompson.  The entity for whose benefit the transfer was made was the Debtor.  The funds being distributed were being loaned to the Debtor and her husband.  Paragraph 6 of William Belmonte's trial testimony by Affirmation, confirmed by Mr. Belmonte's testimony at trial stated: "At all times, I understood that the transfer was being made for the benefit of my wife."[59] [Emphasis added.]

---

[57] AE 49-53; RA 1022-1026.
[58] Brief of Appellant, at * 18-21.
[59] A. 392-393; Mov. 3, 2016, Tr: 17:25-18:2.

11 U.S.C. § 101(54)(A) states:  "Definitions.  In this title the following definitions apply ... (54) The term "transfer" means (A) the creation of a lien."  The Second Mortgage lien was never transferred by Patrick Thompson.  It was simply avoided and recovered by the Trustee for the benefit of the Debtor's Estate.

In New York, mortgages convey no title or right of possession.  *Johnson v Augsbury Org.*, 167 A.D.2d 783, 784 (3d Dept. 1990).

All of the case law in the various Circuits where the "dominion and control test" has been utilized to ascertain an "initial transferee" or "the entity for whose benefit the transfer was made" relate to an actual transfer of ownership or possession of estate property to a third party; *e.g.*, an initial transfer of personal property (money or depreciable personal property), the selling price of real property, or collection of cash from accounts receivable purchased by a factor from a Debtor. The *res*, in the initial form transferred **from** the Debtor's Estate, was then transferred to an intended third-party beneficiary.[60]  *See, e.g., Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52 (2d Cir.1997), *cert. denied,* 524 U.S. 912, 118 S.Ct. 2295 (1998), 141 L.Ed.2d 154 (1998) (Insurance Broker acting to transfer Debtor's refunded excess premium payments for purchase "tail coverage" from law firm's primary carrier); *Tese-Milner v. Moon* (*In re Moon*), 385 B.R. 541 (Bankr. S.D.N.Y. 2008)(attorney depositing clients' personal injury settlement payment into trust account was only initial transferee as to portion received for his attorney's fees and costs.[61]); *In re Moskowitz*, 85 B.R. 8, 11 (E.D.N.Y. 1988)(Trustee sued title company for amount escrowed by purchaser's lender to satisfy outstanding liens required to complete unauthorized Chapter 11

---

[60] Here, the Debtor did not transfer $250,000.00.  The Debtor only transferred (issued) a lien on Estate property.
[61] This is not analogous to the current appeal because the mortgage lien had previously been voided and preserved for the benefit of the Debtor's Estate.   As argued in Point IV below, The Brand Law Firm, P.A. would only have been a mediate or intermediate transferee.

Postpetition sale of Debtor's residence; held that title company was not initial transferee.); all cited in Appellant's Brief.  Also *see*, *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988)(Company controlled by Debtor sent check to European American Bank with instructions to deposit into Debtor's account; bank held not to be initial transferee); *Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties Limited Partnership)*, 99 F.3d 151 (4th Cir. 1996)(Debtor's Estate originally included the $22,500.00 in the form of cash; cash was transferred Postpetition from Debtor by cashier's check to Atlanta Motor Speedway ("AMS"); AMS held to be the initial transferee); *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996)(Debtor's Estate directed its bank to issue a $100,000.00 cashier's check from Debtor's checking account to Markgrafs; Markgrafs argued the bank issuing the cashier's check was the initial transferee; Markgrafs were held to be the initial transferees).

"The note represents the primary personal obligation of the mortgagor while the mortgage is merely the security for such obligation." *Wyoming County Bank & Trust Co. v. Kiley*, 75 A.D.2d 477, 480, 430 N.Y.S.2d 900 (4th Dept. 1980).  "A mortgage is recognized to be a lien remedy. The foreclosure of the mortgage is the legal process for realizing upon the lien [internal citation omitted]. The principal form of mortgage enforcement is the equitable action to foreclose [internal citation omitted].  Thereby the encumbered property is sold under the supervision and control of the court and the proceeds of sale applied to the satisfaction of the mortgage lien." *Id.*

The Note provided for a single payment of principal and accrued interest maturing January 2, 2019.  Thus, the Note was not in default at any time between the July 18, 2014, recording of the Second Mortgage and March 24, 2015, the date of the Bankruptcy Judge's Order avoiding the Second Mortgage under 11 U.S.C. §§ 549 and 550, preserving the lien created by the Second Mortgage for the benefit of the Debtor's Estate under 11 U.S.C. § 551. Therefore, the Second

Mortgage remained securitization for a non-defaulted debt only during those 8 and ½ months.

The Debtor and her husband's directive to Thompson to transfer the $250,000.00 loan proceeds in payment of the Debtor's criminal defense attorney's fees constituted an immediate transfer under 11 U.S.C. § 550(a)(2), not an initial transfer or a transfer to an entity for whose benefit the initial transfer was made under 11 U.S.C. § 550(a)(1).

[See Point IV, *infra*, acknowledging that but for the Chapter 7 Trustee having already elected to recover and having recovered and preserved the Thompson Mortgage lien for the benefit of Debtor's Estate under 11 U.S.C. § 551, the Chapter 7 Trustee could have elected to have sought a $250,000.00 recovery from the Appellees as immediate or mediate transferees under 11 U.S.C. § 550(a)(2).]

**IV.**

**DEFENDANT, THE BRAND LAW FIRM, P.A., WOULD HAVE BEEN AN IMMMEDIATE TRANSFEREE OF THE DEBTOR AND HER HUSBAND'S UNAUTHORIZED POSTPETITION LIEN SUBJECT TO AN ACTION TO RECOVER THE $250,000.00 LOANED IN EXCHANGE FOR THE SECOND LIEN ON THE CRESCENT COURT PROPERTY UNDER 11 U.S.C. § 550(a)(2); HOWEVER, BECAUSE THE APPELLANT, CHAPTER 7 TRUSTEE, HAD ALREADY SOUGHT AND OBTAINED A JUDGMENT PRESERVING THE UNAUTHORIZED POSTPETITION LIEN FOR THE BENEFIT OF THE DEBTOR'S ESTATE UNDER 11 U.S.C. § 551, THE CHAPTER 7 TRUSTEE HAD ELECTED ITS REMEDY AND WAS LIMITED IN ITS RECOVERY AGAINST THE IMMEDIATE TRANSFEREE TO PROOF OF ACTUAL DAMAGES TO THE DEBTOR'S ESTATE AS A RESULT OF THE SINGLE SATISFACTION PROVISION SET FORTH IN 11 U.S.C. § 550(d).**

Applicable portions of 11 U.S.C. § 541 state:

**§541. Property of the estate**
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
    (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
    (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

25

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

**(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section** 510(c) or **551 of this title.** [Emphasis added.]

…

(6) Proceeds…of or from property of the estate **….**

Emphasis added.

The facts in this proceeding prove that the Chapter 7 Trustee had obtained an Order avoiding and recovering the Thompson Mortgage lien and had it preserved for the benefit of the Debtor's Estate under 11 U.S.C. § 551 by order of the Bankruptcy Court on March 24, 2015, **prior to** the April 22, 2015, adversary case against the Appellees-Defendants being filed.

On June 28, 2016, five months prior to trial of the consolidated adversary proceeding, the Bankruptcy Judge entered an interlocutory order[62], *inter alia*, denying Appellees'-Defendants' Motion for Judgment on the Pleadings as to the remedy sought under 11 U.S.C. § 550(a) in Count II of the Amended Complaint in the Adversary Case.  The interlocutory holding further stated: "Moreover, the Court rejects Defendants' position that the Trustee is prohibited from recovering the $250,000 from Defendants as a double recovery because he has successfully avoided the Thompson Mortgage. It is well settled that until finally paid, litigants may look to multiple parties to recover the same loss. *Fed. Ins. Co. v. PGG Realty, LLC*, 529 F. Supp. 2d 460, 463 (S.D.N.Y. 2008). Neither the pleadings themselves nor the documents attached to the pleadings suggest that the Trustee has recovered the $250,000 allegedly borrowed by Debtor and transferred to Defendants. Thus, no double recovery has occurred."

---

[62] *In re Belmonte*, 551 B.R. 723, 732 (Bankr. E.D.N.Y. 2016)

The *PGG Realty* case was not a bankruptcy matter. The holding in *PGG Realty*, a marine mortgage case, was based upon the legal principle: "While double recovery is barred, it is well-established that, until finally paid, a claimant may seek recovery of the same loss from two different parties." *Id*. at 463. The case did not discuss in any form or fashion the tension between 11 U.S.C. § 550(a), 11 U.S.C. § 550(d) and 11 U.S.C. § 551.

"Section 550(d) typically is used to protect one transferee when a different transferee in the transfer chain already has repaid the claim. One transferee's actions shield another transferee from duplicate liability. The Trustee here is not entitled to *both* the repayment of the transfer *and* to a separate judgment against a transferee." *Kapila v. Suntrust Mortg. (In re Pearlman)*, 515 B.R. 887, 898 (Bankr. M.D. Fla. 2014). "The focus is whether the transfer was repaid, not who repaid it. Section 550(d)'s primary aim is to prevent the estate from receiving a windfall." *Id*.

In *Eisen v. Allied Bancshares mortgage Corp (In re Priest)*, 268 B.R. 135 (Bankr. N.D. Ohio 2000), the Bankruptcy Court held:

> Countrywide's avoided interest in the Property-the mortgage-becomes an asset of the estate based on §§ 551 and 541(a)(4) of the Bankruptcy Code. Section 551 first preserves the mortgage for the benefit of the estate: "[a]ny transfer avoided under section . . . 544 . . . is preserved for the benefit of the estate . . . with respect to property of the estate[.]" 11 U.S.C. § 551. The mortgage then becomes an asset of the estate under § 541(a)(4), which provides that the estate includes "[a]ny interest in property preserved for the benefit of . . . the estate under section . . . 551 of this title." 11 U.S.C. § 541(a)(4). *See* [*McRoberts v. Transouth Fin. (In re Bell), 194 B.R. 192 (Bankr.S.D.Ill.1996)*]. The Debtor's interest in the Property became property of the estate at the time of filing. 11 U.S.C. § 541(a)(1). When that interest merges with the avoided mortgage, the Trustee holds the entire interest in the Property.

In *Lassman v. Patts, (In re Patts)*, 470 B.R. 234, 243 (Bankr. D. Mass. 2012, the Bankruptcy Court held: ""Simply stated, the transfer the Trustee seeks to avoid has already been undone and the undiminished value of the transferred asset has been restored to the bankruptcy estate. Accordingly, any "recovery" for the benefit of the estate has already been completed, albeit

27

by the Debtor and Patts. The Trustee's stated premise: "[t]he estate's interest springs from Helen Patts, not the Debtor ..." is faulty. The estate's interest "springs" from the legal and equitable interests of the Debtor in property owned by him as of the commencement of the case, which in this case included a 50% undivided interest in the Property. *See* 11 U.S.C. § 541(a)."

"The trustee is entitled to only a single satisfaction under [550(a)]." 11 U.S.C. § 550(d). Thus, although the trustee can sue many defendants, his total recovery is limited to the initial transfer or its value. For example, if the debtor transferred $1.00 fraudulently, and that $1.00 was transferred and re-transferred fifty times, the Trustee can sue the initial transferee and the fifty subsequent transferees, but can only recover $1.00. *Picard v. The Lustig Family 1990 Trust (In re Madoff)*, No 10-04417, Dkt. Entry 82, at * 7-8 (Bankr. S.D. N.Y. June 1, 2017).

<u>The Appellees'-Defendants' Sixth and Eighth Affirmative Defenses to the Amended Complaint raised both the election of remedies and the single satisfaction issues.</u>[63]

The case of *HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2d Cir. 1995) includes a holding directed to the very issue addressed herein.  In *HBE* the Second Circuit discussed the alternative remedies available concerning a $100,000.00 mortgage issued by the Debtor, $60,000.00 of which had been used to pay attorney's fees of co-defendants in a separate RICO action.  [A separate issue concerning a $250,000.00 mortgage was also discussed in the holding; however, it was factually unrelated to the subject issue.]

> [A]n unjustified double recovery would result if Petitioners could void both the relevant portion of Clemence's second mortgage and the transfer of the proceeds to the Attorneys. Cf. In re Checkmate Stereo & Electronics, Ltd., 9 B.R. 585, 622 (Bankr. E.D.N.Y.1981) (allowing only single recovery by imposing joint and several liability on multiple transferees under New York UFCA and Bankruptcy Code), aff'd, 21 B.R. 402 (E.D.N.Y. 1982); Robert J. White, Leveraged Buyouts & Fraudulent Conveyance Law Under the Bankruptcy Code, 1991 Ann. Surv. Am. L. 357, 410-11 (1992) (bankruptcy trustee may recover only once from multiple transferees in multilateral fraudulent conveyance).  Thus, if Petitioners elect to void

---

[63] A. 94.

28

the relevant portion of the mortgage, any judgment against the Attorneys must be reduced by an equivalent amount. This election of remedies does not affect Petitioners' rights vis-a-vis Clemence's other mortgage or the other [allegedly fraudulent] payments to the Attorneys.

*Id.* at 640.

The Chapter 7 Trustee could have elected not to have avoided and obtained an Order against the initial transferee of the mortgage lien, Patrick Thompson, under 11 U.S.C. § 551, thereby preserving the lien for the benefit of the Debtor's Estate and proceeded only against the intermediate and/or mediate transferees for the $250,000.00 as 11 U.S.C. § 541(a)(6) proceeds.

<u>Instead, Appellant, having previously elected to avoid and preserve the Thompson Mortgage lien for the benefit of the Debtor's Estate and having proved no actual damages at trial during the eight months that the unauthorized Postpetition lien encumbered the Debtor's Estate's real property, the Appellant-Plaintiff is not entitled to a money judgment against the Appellees-Defendants under 11 U.S.C. § 550(a).</u>[64]

## V.

**TO THE EXTENT THAT THE APPELLATE COURT HOLDS THAT THE BANKRUPTCY COURT WAS CORRECT IN RULING THAT THE TRUSTEE HAD NOT ELECTED ITS REMEDY BY PRESERVING THE UNAUTHORIZED POSTPETITION LIEN FOR THE BENEFIT OF THE DEBTOR'S ESTATE UNDER 11 U.S.C. § 551, THE TRIAL COURT DID NOT ERR BY APPLYING THE "MERE CONDUIT" DEFENSE TO THE $250,000.00 BANK WIRED FROM PATRICK THOMPSON INTO THE BRAND LAW FIRM, P.A. TRUST ACCOUNT AND DID NOT ERR BY FAILING TO HOLD DEFENDANT, CRAIG A. BRAND, INDIVIDUALLY LIABLE FOR ANY PORTION OF THE SAID MONIES.**

This portion of the Brief of Appellees focuses specifically on Appellant's Issue "2":

""Whether the Bankruptcy Court erred in concluding that Craig Brand and/or The Brand Law Firm acted as a "mere conduit" with respect to the funds received as proceeds of the mortgage executed

---

[64] This issue is fully addressed in the companion appeal docketed under Case No. 17-cv-2503-JMA.

in favor of Patrick Thompson?'"   The following case controverts Appellant's argument.

      *Security First Nat'l Bank v. Brunson (In the Matter of Coutee)*, 984 F.2d 138 (5th Cir.

1993), cited with approval in *In re Finley, supra*, dealt with a personal injury claim settlement

check for $48,000.00 payable to the Coutees.   "To assist its clients financially pending litigation,

the [law] firm would arrange for Security First to loan the clients money, with the firm serving as

unconditional guarantor on the notes."   *Id*. at 139.   When the $48,000.00 settlement check was

tendered, the Coutees endorsed the check and the law firm deposited the monies into the law firm's

trust account.   "The firm then claimed its legal fees out of the **[trust account]**[65] funds, returned a

portion of the award to the Coutees, and paid the Security First note in full with the remaining

money. Security First marked the note paid and delivered it to the firm, which in turn delivered it

to the Coutees."   *Id*. at 140.   Within ninety (90) days thereafter, the Coutees filed their joint Chapter

7 Bankruptcy Petition.   The Bankruptcy Trustee subsequently filed an avoidance action against

Security First.   The bank contended "that the firm, not it, was the initial transferee of the funds

because the firm received the money directly from the Coutees."   *Id*. at 140.   The Court of Appeals

held:

> Adopting the dominion or control test, we find that the bank, not the firm, was the
> initial transferee of the funds. As the district court noted, the funds were deposited
> into the firm's trust account, as opposed to its business account, indicating that they
> were held merely in a fiduciary capacity for the Coutees.

*Id*. at 141.

> As the bankruptcy court noted, "[t]he law firm, under Louisiana law, was required
> to keep the client's funds in an identifiable trust account in order to avoid the charge
> of conversion." *See Louisiana State Bar Ass'n v. Gross*, 576 So.2d 504 (La.1991).

*Ibid*.

> The bank's position ignores the obvious; that no matter how instrumental the firm
> was in assisting the Coutees in obtaining the loan, it was still the bank that loaned

---

[65] Emphasis added.

them the money. The firm's role with respect to the received money was to accept the funds in settlement of its client's case, deposit the money in trust, keep as fees only what the Coutees agreed to, and pay the rest to the bank on behalf of the Coutees in satisfaction of their loan. *Cf. In re Fabric Buys of Jericho, Inc.*, 33 B.R. 334, 337 (Bankr.S.D.N.Y.1983) (holding that the law firm that accepted settlement check on behalf of client, deposited check into escrow account separate from firm's working accounts, and paid funds to client was mere conduit, not initial transferee). The law firm had no legal right to put the funds to its own use, and thus lacked the requisite dominion required to be the initial transferee.

*Ibid*.

The undisputed evidence at trial reflected that $250,000.00 proceeds of the Thompson Loan was deposited into The Brand Law Firm, P.A.'s Trust Account at Bank of America in Florida.

In Florida, a lawyer's obligation concerning funds held in his or her trust account is as follows:

> Regardless of the escrow agent's other relationships or duties to the principal parties (lawyers often hold funds in escrow where their client is one principal and some other non-client is another principal party) when principal parties agree upon an escrow agent, by undertaking to act as such, the escrow agent establishes a new legal relationship to the principal parties and by an expressed agreement or by agreement implied in law, agrees to certain basic inherent matters. The relationship established is that of principal and agent and involves the escrow agent being an agent of, and owing a fiduciary duty to, all of the principal parties. In the absence of an express agreement, written or oral, the law will imply from the circumstances of the escrow that the agent has undertaken a legal obligation (1) to know the provisions and conditions of the principal agreement concerning the escrowed property, and (2) to exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property (i.e., to disburse the escrowed funds) in strict accordance with the principals'' agreement.

*The Florida Bar v. Joy*, 679 So.2d 1165, 1167 (Fla. 1996)(citing, *United American Bank of Central Florida, Inc. v. Seligman*, 599 So.2d 1014, 1016 (Fla. 5th DCA 1992).

The Appellant focused its questioning and its argument on Patrick Thompson not providing instructions as to the disbursement of the $250,00.00 wired into The Brand Law firm, P.A. Trust Account.  However, under the *Joy* holding, Patrick Thompson as the lender of the $250,000.00 had no right to exercise control over the escrowed sum.  Instead, in its capacity as the escrow agent, not only were the Debtor and her husband principals, but also, the Sadaka Law Group, PLC, Simon

& Partners LLP, and The Brand Law Firm, P.A., were additional principals who had an interest in the escrowed funds. <u>The trial testimony is totally consistent with the Brand Law Firm, P.A. Trust Account being a mere conduit for the attorneys' fees disbursed by agreement of all principals.</u>

## VI.

**TO THE EXTENT THAT THE APPELLATE COURT HOLDS THAT THE BANKRUPTCY COURT WAS CORRECT IN RULING THAT THE TRUSTEE HAD NOT ELECTED ITS REMEDY BY PRESERVING THE UNAUTHORIZED POSTPETITION LIEN FOR THE BENEFIT OF THE DEBTOR'S ESTATE UNDER 11 U.S.C. § 551, THE TRIAL COURT DID NOT ERR BY AWARDING ONLY ONE-HALF OF THE $118,864.00 NET TRUST ACCOUNT BALANCE TO THE APPELLANT-CHAPTER 7 TRUSTEE IN PARAGRAPH "1" OF THE JUDGMENT.**

On pages 17-18 of the Brief of Appellant, the Appellant argues:

The Belmonte were not mere joint tenants with respect to their homestead, in which case each of them would have been entitled to an undivided one-half interest in the property. Had they been joint tenants, Mr. Belmonte would indeed have been free to dispose of his interest in the property as he so chose. However, because Mr. and Mrs. Belmonte were a married couple, under New York law, they were both simultaneously seized of the entire interest in the property, as tenants by the entirety, such that "each own[ed] the entire fee."

Appellant completely disregards the following facts contained in the Stipulation of Facts in the JPM:

13. From the Petition Date <u>through April 21, 2016, at which time the Debtor and her husband were divorced</u>, the home and property located at 5 Crescent Court, Wading River, Suffolk County, New York (the "Crescent Court Property") was owned by the Debtor and her then-husband as tenants by the entirety. [Emphasis added.][66]

20. Alice Belmonte was incarcerated under the laws of the State of New York from October 17, 2013, until approximately March 2016.[67]

As a result, prior to the November 2-3, 2016, trial, the tenancy of the Debtor and her

---

[66] AE 19.
[67] AE 20.

husband had ~~de~~volved into a tenancy in common.  Since the recovery was limited to the Debtor's

Estate's interest in the Crescent Court Property as of the trial date, the Trustee could not recover

more than one-half of the $118,864.00 net trust account balance; the amount remaining after

disbursement of attorney's fees from the trust account to the Sadaka Law Group, PLC, and Simon

& Partners LLP.

At the risk of swinging after the bell, the Appellees further point out:

While the Debtor's Estate includes real property held by the Debtor and Non-Debtor as

tenants in common or tenants by the entireties, 11 U.S.C. §§ 363(h), (i) and (j) restrict the Trustees

rights to dispose of such real properties and mandates how the proceeds of any such sales must be

distributed.  These subsections of 11 U.S.C. §§ 363 state:

> (h) Notwithstanding subsection (f) of this section, the trustee may sell both the
> estate's interest, under subsection (b) or (c) of this section, and the interest of any
> co-owner in property in which the debtor had, at the time of the commencement of
> the case, an undivided interest as a tenant in common, joint tenant, or tenant by the
> entirety, only if—
>> (1) partition in kind of such property among the estate and such co-owners
> is impracticable;
>> (2) sale of the estate's undivided interest in such property would realize
> significantly less for the estate than sale of such property free of the interests of
> such co-owners;
>> (3) the benefit to the estate of a sale of such property free of the interests of
> co-owners outweighs the detriment, if any, to such co-owners; and
>> (4) such property is not used in the production, transmission, or distribution,
> for sale, of electric energy or of natural or synthetic gas for heat, light, or power.
>
> (i) Before the consummation of a sale of property to which subsection (g) or (h) of
> this section applies, or of property of the estate that was community property of the
> debtor and the debtor's spouse immediately before the commencement of the case,
> the debtor's spouse, or a co-owner of such property, as the case may be, may
> purchase such property at the price at which such sale is to be consummated.
>
> (j) After a sale of property to which subsection (g) or (h) of this section applies, the
> trustee shall distribute to the debtor's spouse or the co-owners of such property, as
> the case may be, and to the estate, the proceeds of such sale, less the costs and
> expenses, not including any compensation of the trustee, of such sale, according to
> the interests of such spouse or co-owners, and of the estate.

In *In re Murray*, 543 B.R. 484, 488 (Bankr. S.D.N.Y. 2016), the Bankruptcy Judge discussed purpose of subsection 363(h) and its interplay subsections 363(i) and (363(j)):

> [T]he Bankruptcy Code includes provisions with the potential to increase the amount that can be realized when jointly held property is sold. Section 363 of the Code provides in substance that when the requirements of section 363(h) ... and its companion provisions **[Footnote 21, referring to and reciting 363(i) and 363(j)]** are satisfied, a bankruptcy trustee can sell the jointly held property free and clear of both owners' interests, without the co-owners consent, leaving the nondebtor only with a right of first refusal to match the sale offer (and thus to stay in residence), and with her share of the proceeds of the forced sale.

The Appellant's argument contradicts the applicable bankruptcy code provisions. The Non-Debtor co-owner, whether by the "entireties" or "joint tenancy" maintains and cannot be deprived of their proportional interest in the real property or the proceeds of any disposition thereof.

## VII.
## APPELLEES-DEFENDANTS, CRAIG A. BRAND AND THE BRAND LAW FIRM, P.A., ARE NOT JOINTLY AND SEVERALLY LIABLE FOR THE RETURN OF THE ENTIRE PROCEEDS OF THE $250,000.00 THOMPSON LOAN.

On pages 18-19 of its Brief, Appellant argues that Craig A. Brand, individually, and The Brand Law Firm, P.A. are jointly and severally liable for return of the $250,000. Thompson Loan. Much of the Appellees response to this argument has already been set forth in the various points argued above; however, Appellees additionally point out that the cases cited by Appellant in its argument do not support the Appellant's contention.

By merely citing *In re Bridgeview Aerosol*, 538 B.R. 477, 513 (Bankr. N.D. Ill. 2015), as ""finding that sole member of LLC was "entity for whose benefit the transfer was made" where "[h]e had complete control over the management, operations, and property, and thus access to the

Bunny payments"", Appellant has failed to address the basis of the Bankruptcy Court's holding

under 11 U.S.C. § 550(a)(1).  The *Bridgeview* decision resulted from an adversary proceeding filed

by the Official Committee of Unsecured Creditors against The Fountainhead Group, Inc., John F.

Romano, Linda E. Romano, and Bunno Boarding, LLC ("Bunno").  "Bridgeview's sole member

and parent company was USAerosols, and USAerosols' sole members as of Bridgeview's

bankruptcy filing were John and Linda [Romano]."  *Id*. at 485.  "John was the 100% owner of

Bunno as well as an officer and director. Bunno's sole asset is a condominium located at 1212

North Lake Shore Drive, Unit 12AS, Chicago, Illinois." [Emphasis added.]  *Ibid*.  John Romano

"was also the majority interest holder in Fountainhead", which owned a controlling interest in

Black Flag Brands, LLC ("Black Flag"), and he was also a manager of Black Flag.  *Ibid*.  Within

one year immediately prior to Bunno filing for relief under Chapter 11, Bridgeview made payments

totaling $104,166.60 to Bunno.  *Id*. at 493-494.  The Court again pointed out that "John was the

sole member of Bunno, and the company's sole asset was a condominium located on North Lake

Shore Drive in Chicago."  *Id*. at 494.  The Court further found:

> Defendants argue that these payments represented the $125,000 John Romano
> received each year as compensation for services rendered as Bridgeview's CEO. In
> the alternative, Defendants contend that the payments were rent for the
> condominium Bunno owned. As discussed more fully in Count IX below, there is
> no credible evidence to support a finding that the payments were either
> compensation or rent. Since John stood on both sides of the transaction, the burden
> is on John to demonstrate that making these payments to Bunno was fair and served
> Bridgeview's best interests. There is no evidence to support a finding that paying
> Bunno $104,166.60 in less than a year was fair or in Bridgeview's best interests.
> The court finds that making these payments was a breach of John Romano's
> fiduciary duties to Bridgeview. [Emphasis added.]

*Id*. at 501.

On the basis of the facts found by the Bankruptcy Court, the basis of the holding discussed by

Appellant is:

> [T]he [Creditor's] Committee seeks to recover the value of the Bunno Payments pursuant to 11 U.S.C. § 550, which is quoted above in Count VIII. Bridgeview made the Bunno Payments directly to Bunno. Therefore, Bunno is the initial transferee. The court finds that the Committee shall recover the full amount of the Bunno Payments, $104,166.60, from Bunno as the initial transferee. As discussed more thoroughly in Count VIII, John is a person for whose benefit such transfer was made, also known as a transfer beneficiary. The court finds that the Committee shall recover the Bunno Payments from John [Romano] as well, although as stated in Count VIII, the Committee is entitled to only a single satisfaction under this count. 11 U.S.C. § 550(d).

*Id*. at 513.

Appellant next cited *In re Cassandra Group*, 338 B.R. 583 (Bankr. S.D.N.Y. 2006).  In *Cassandra*, the Chapter 7 Trustee for Cassandra Group commenced an adversary proceeding against Artists Marketing Corp. ("AMC"), the Bathgate Group, and Lawrence Bathgate ("Bathgate"), individually, seeking recovery, of a $300,000.00 transfer of Cassandra Group's monies to AMC pursuant to a settlement agreement between Cassandra Group, AMC and the Bathgate Group.

 Appellant's Brief simply extracted the following from *Cassandra* at 587 in a faulty attempt to bolster its joint and several liability argument: "finding that principal of shell company that received money was entity for whose benefit transfer was made."  Brief of Appellant, at * 19.

The complete quote from the *Cassandra* opinion stated: ""Bathgate testified at his deposition that he effectively considered himself and AMC as equivalent: AMC was "simply a shell entity".  *Id*. at 587.  The opinion later stated: ""when it was operating, AMC "got funded on an as-needed basis" and was "funded from essentially money [Bathgate] personally provided." The Bankruptcy Court ruled that the $300,000.00 was avoided as a constructive fraudulent transfer and entered judgment against all Defendants, including Bathgate, individually.  The latter was based on Bathgate's own testimony, resulting in the Bankruptcy Court's determination that Bathgate was an entity for whose benefit the initial transfer was made under 11 U.S.C. § 550(a)(1).

36

Contrary to Appellant's argument, there was no evidence at trial that provided support for a determination that The Brand Law Firm, P.A., was either a "shell company", an alter ego of Craig A. Brand, individually, or that Craig A. Brand utilized The Brand Law Firm, P.A. to perpetrate a fraud.  The evidence clearly supported a determination that The Brand Law Firm, P.A, functioned as a legitimate professional corporation.  [To give any credence to Appellant's argument under the facts of this case would literally open the floodgates of litigation against any single member or single shareholder registered business entity.]

## CONCLUSION

Without waiving the issue appealed by The Brand Law Firm, P.A., in companion Case No. 17-cv-2503-JMA, the Appellees respectfully point out that the Appellant has failed to demonstrate that the Bankruptcy Court abused its discretion in its choice of remedies; that the Bankruptcy Court committed clear error in its findings of material facts; that the Bankruptcy Court's decision rests on an error of law; or its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions.

Appellees-Defendants, Craig A. Brand and The Brand Law Firm, P.A., request this Court to affirm the Bankruptcy Court's Judgement as to all issues being appealed by Appellant-Plaintiff, Harold D. Jones, Chapter 7 Trustee in this appeal.

## ADDENDUM-RELEVANT STATUTORY PROVISIONS

### 11 U.S.C. § 101.  Definitions
...
(54) The term "transfer" means
     (A) the creation of a lien.


### 11 U.S.C. § 329. Debtor's transactions with attorneys
(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
     (1) the estate, if the property transferred—
     (A) would have been property of the estate; or
     (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
     (2) the entity that made such payment.


### 11 U.S.C. § 363. Use, sale, or lease of property
...
(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
     (1) partition in kind of such property among the estate and such co-owners is impracticable;
     (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
     (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
     (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

(i) Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

(j) After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall

distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.
...
(n) The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.


## 11 U.S.C. § 541. Property of the estate

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

…

(6) Proceeds…of or from property of the estate **….**


## 11 U.S.C. § 544. Trustee as lien creditor and as successor to certain creditors and purchasers

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

(b)      (1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

(2) Paragraph (1) shall not apply to a transfer of a charitable contribution (as that term is defined in section 548(d)(3)) that is not covered under section 548(a)(1)(B), by reason of section 548(a)(2). Any claim by any person to recover a transferred contribution described in the preceding sentence under Federal or State law in a Federal or State court shall be preempted by the commencement of the case.


## 11 U.S.C. § 549. Postpetition transaction

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)      (A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.


## 11 U.S.C. § 550. Liability of transferee of avoided transfer

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

...

...

(d) The trustee is entitled to only a single satisfaction under subsection (a) of this section.


## 11 U.S.C. § 551. Automatic preservation of avoided transfer

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

Dated: Orlando, Florida
        August 10, 2017

                                    **S/ CRAIG A. BRAND, ESQ.**

                                    _____
                                    **Craig A. Brand, Esq.**
                                    Florida Bar No. 896111
                                    THE BRAND LAW FIRM, P.A.
                                    GAI Building
                                    108 E. South Street, Suite 500
                                    Orlando, Florida 32801
                                    Tel. (305) 878-1477
                                    E-Mail: Craig@thebrandlawfirm.com

                                    *ATTORNEYS FOR APPELLEES-*
                                    *DEFENDANTS, CRAIG A. BRAND*
                                    *AND THE BRAND LAW FIRM, P.A.*